IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 8:07CR235 |
| vs. | ) |
| | ) REPORT AND RECOMMENDATION |
| ROMANDA DENISE BENNETT, | ) |
| Defendant. | ) |

This case is before the court on the defendant Romanda Bennett's Motion to Suppress (#13).  The motion was heard on November 7, 2007 and the Transcript of the hearing (#36) was filed on November 26, 2007, at which time the motion was deemed submitted.

The defendant moves for the suppression of all evidence and statements obtained from her on May 14, 2007.  She alleges that, following her arrest, law enforcement conducted a warrantless search of her home, without probable cause or valid consent, in violation of her rights under the Fourth Amendment to the United States Constitution.  She further alleges that law enforcement obtained statements from her in violation of her *Miranda*[1] rights, and the Fifth and Sixth Amendments to the United States Constitution.

In response, the government argues that the search of the defendant's home, while admittedly without a warrant, occurred after the defendant voluntarily executed a written consent to search, and that her statements are admissible because she was advised of her *Miranda* rights and voluntarily waived those rights both verbally and in writing.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966)

## FACTUAL BACKGROUND

David Bruck testified that he currently serves as an officer of the Omaha Police Department assigned to the gang unit. On May 14, 2007 he responded to a disturbance call at 2907 Lothrop, an area he described as a "hot spot" and the site of recent gun violence (6:8-14). Upon his arrival he was approached by a woman later identified as Christie Standley, who told him, "she's got a gun." Standley then pointed to 2905 Lothrop (7:6:13). As Bruck looked toward 2905 Lothrop, he saw a woman, later identified as the defendant, Romanda Bennett, standing in the doorway. Bruck watched as Bennett exited the residence swinging a baseball bat (8:21-9:8). Bruck drew his weapon and ordered Bennett to drop the bat and to lay flat on the ground (9:9-14).

Bruck testified that he then interviewed William Collins, who told him that Bennett came out of her house with what he described as a Mack-11 machine pistol with a 30-round clip which she pointed in the direction of Christie Standley and Collins (12:1-13:3). Because Bruck believed the firearm might still be in the house, he and Omaha Housing Authority ("OHA") Officer Reggie Gunter asked Bennett for permission to search. Gunter explained to Bennett what would happen if she signed the form. After it was agreed that Bennett could be present inside the residence to make sure the officers did not take anything, she signed the form (15:3-19). Officers then searched the residence. They found a Cobray PM-11 9mm firearm and a 30-round magazine containing 29 rounds of 9mm ammunition in Bennett's bedroom (15:25-16:22).

On cross-examination Officer Bruck testified that OHA Officer Gunter arrived at the site of the disturbance call within minutes of Bennett being taken into custody (44:17-25)

and that he was not aware that any other officers had asked Bennett for permission to search and been refused (35:24-36:2).

Officer Bruck also noted that during the search of the home Bennett provided police officers with a key to the bedroom where the weapon and ammunition were located (38:20-39:1).

On recross examination Bruck testified that while he did not hear the entire conversation between Gunter and defendant Bennett, he never heard Gunter tell Bennett that she was obligated to cooperate and allow officers to search the residence because it was an OHA residence (48:16-23).

Bruck testified that Bennett was transported to Omaha police headquarters where he informed her of her rights using an Omaha Police Department *Miranda* form (Ex. 2), (18:11-22). After initialing each question, Bennett signed the form and gave a statement (18:14-19:13). Because Bennett appeared to have been drinking, Bruck asked about her intoxication level. Bennett responded that she only had a buzz from drinking beer, stating that she was "not no sloppy drunk" (24:9-24). Bruck's contact with Bennett at police headquarters was memorialized in both audio and video formats in Exhibit 3, Exhibit 4, and Exhibit 5 (21:2-24).

On cross-examination Bruck testified that he is trained and experienced in the detection of the presence of people who are intoxicated by either alcohol and/or drugs. Prior to Bennett's signing the consent form, he was close enough to smell the odor of alcohol on her person. He testified he did not smell alcohol on Bennett's person, but admitted he could tell she had been drinking (40:10-18).

**LEGAL ANALYSIS**

### A.  Consent to Search

Romanda Bennett contends that the warrantless search of her residence violated her right to be secure from unreasonable searches and seizures.

The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers and effects."  U.S. Const. amend. IV. A warrantless search of a house is presumptively unreasonable.  *Payton v. New York,* 445 U.S. 573, 586 (1980), and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment.  *Steagald v. United States*, 451 U.S. 204, 211-212 (1981).  Police may conduct a search of someone's business or home, even without a warrant or probable cause, if that person voluntarily consents to the search.  *See United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990); *United States v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000); *see also United States v. Deanda*, 73 F.3d 825 (8th Cir. 1996).

To determine whether a consent is voluntary, the court must examine the totality of the circumstances, including the characteristics of the accused and the nature of the encounter.  *See United States v. Flores*, 474 F.3d 1100, 1104 (8th Cir. 2007); *Bradley*, 234 F.3d at 366.  The government has the burden of proving the consent was voluntary.  *United States v. Parris*, 17 F.3d 227, 229 (8th Cir.), *cert. denied*, 511 U.S. 1077 (1994); *United States v. Heath*, 58 F.3d 1271, 1275 (8th Cir.), *cert. denied*, 516 U.S. 892 (1995).  "The prosecution need not prove that the individual is fully aware of his or her rights under the Fourth Amendment in order to establish a voluntary consent."  *Heath*, 58 F.3d at 1275 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973)).

I credit Officer Bruck's testimony that Housing Authority Officer Gunter went over the permission to search form (Ex. 1) with Bennett. Based on the testimony, which I find to be credible, I find that Bennett knew she was being asked for permission to search her residence and knew, as stated in the form, that she could refuse to give permission. It is also important to note that Bennett, fearing officers might take her property, negotiated her presence during the search. Knowing her rights, Bennett signed the form and gave officers permission to search her residence.

Turning to the issue of voluntariness and the *Chaidez* factors,[2] there is no evidence, save the issue of intoxication, that the defendant's will was overborne, or that she was coerced, deceived, or promised anything in return for signing the consent form. *See United States v. Syslo*, 303 F.3d 860, 865-66 (8th Cir. 2002) (To determine whether a waiver was voluntary, the court considers the totality of the circumstances and must determine whether

---

[2] Courts in the Eighth Circuit generally consider the "*Chaidez* factors" to determine if consent was voluntary:

"Characteristics of persons giving consent" which may be relevant to the question include: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*Id.* at 381 (internal citations omitted). Characteristics of "the environment in which consent was given" include:

whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*Id.* (internal citations omitted). The factors should not be applied mechanically, *id.*, and no single factor is dispositive or controlling. *United States v. Ponce*, 8 F.3d 989, 997 (5th Cir.1993).

*United States v. Bradley*, 234 F.3d at 366.

the individual's will was overborne.); United States v. Castro-Higuero, 473 F.3d 880, 885-86 (8th Cir. 2007) (same).

Considering the evidence in this case, together with the *Chaidez* factors, I find that Bennett voluntarily consented, in writing, to the search of her residence.

### B. Intoxication

When a defendant claims that a statement was obtained in violation of their *Miranda* rights, the prosecution must by a preponderance of the evidence that those rights were voluntarily waived. *Colorado v. Connelly,* 479 U.S. 157, 168 (1986). In *Connolly*, a schizophrenic defendant challenged the voluntariness of his confession. The Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id*. at 167. The Court also reasoned that there was no reason to require more in the way of a "voluntariness" inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context, and concluded:

> *Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that. Respondent's perception of coercion flowing from the "voice of God,"however important or significant such a perception may be in other disciplines, is a matter to which the United States Constitution does not speak.

*Id*. at 170-71.

In *United States v. Casal*, 915 F.2d 1225 (8th Cir. 1990), *cert. denied*, 499 U.S. 941 (1991), the defendant claimed the district court erred in admitting his confession to bank robbery because, at the time he confessed, he was under the influence of drugs, had not slept for five days, and was concerned about his pregnant girlfriend who was upset and

crying in the police station. On the issue of Casal's alleged use of methamphetamine and lack of sleep, there was evidence that the police were not aware that Casal had used methamphetamine and had gone without sleep. Casal did not act like an intoxicated person and had exhibited rational behavior. The Court of Appeals affirmed the decision of the district court that, in the totality of the circumstances, the confession was voluntary:

> Intoxication and fatigue do not automatically render a confession involuntary; rather, the test is whether these mental impairments caused the defendant's will to be overborne. [citations omitted] In light of the testimony that Casal did not appear to be intoxicated and talked coherently (indeed, refusing to comply with various police requests), there was no clear error in finding him capable of making a voluntary statement.

*Id*. at 1229. *See also, e.g., United States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006) ("Annis provided no evidence that his pain and meth withdrawal caused his will to be overborne."); *United States v. Korn*, 138 F.3d 1239, 1240 (8th Cir.), *cert. denied*, 525 U.S. 947 (1998) (neither exhaustion nor intoxication will necessarily invalidate a Miranda waiver); *United States v. Goodwin*, No. 00-2750, 242 F.3d 377 (TABLE), 2000 WL 1852624 (8th Cir., Dec. 19, 2000) (the Eighth Circuit has not adopted a per se rule that a *Miranda* waiver made under the influence of drugs is involuntary). *See also United States v. Rohrbach*, 813 F.2d 142 (8th Cir.), *cert. denied*, 482 U.S. 909 (1987) (defendant's personal characteristics, including minimal formal education and a history of alcohol and drug abuse and of suicide attempts were constitutionally irrelevant absent proof of coercion); *Boyer v. Daum*, 665 F. Supp. 788 (D. Neb.), *aff'd* 631 F.2d 301 (8th Cir. 1987), *cert. denied*, 484 U.S.1045 (1988) (waiver of *Miranda* rights held voluntary where defendant claimed that he confessed to first degree murder because he was under the influence of drugs and was mentally unstable).

In the instant case, after reviewing the evidence, including the audio and video tapes of Officer Bruck's contact with Bennett at Omaha police headquarters, I find there is no evidence that the police deliberately exploited defendant's now-asserted weaknesses. The evidence indicates Officer Bruck specifically addressed the defendant's drinking and the defendant admitted drinking stating she was not a "sloppy drunk but only had a buzz." I have viewed Exhibits 3, 4, and 5 and I find Bennett to be coherent, rational, and appropriate in her responses to the questions asked during the 45-minute interview. Additionally, I have observed the defendant's signature on the written permission to search form (Ex. 1) signed at 12:06 A.M., and her initials on the *Miranda* rights advisory form (Ex. 2), signed at approximately 1:15 A.M., and I find her signature and initials to be neat and not the writings of an intoxicated person. I find that the government has met its burden of proving that Bennett voluntarily waived her *Miranda* rights.

## RECOMMENDATION

**IT IS RECOMMENDED** that defendant's Motion to Suppress (#13) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be *reviewed de novo* and a different disposition made.

**DATED December 4, 2007.**

                                        **BY THE COURT:**

                                        **s/ F.A. Gossett**
                                        **United States Magistrate Judge**