IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:07CR235 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| ROMANDA DENISE BENNETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on May 9, 2008.

**I.  BACKGROUND**

Defendant was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and with forfeiture of the weapon under 18 U.S.C. § 924(d).  The offense of being a felon in possession carries a maximum term of imprisonment of ten years, with no mandatory minimum.  18 U.S.C. § 924(a)(2).

Bennett entered a plea of guilty to both counts.  In exchange for her plea, the government agreed to move for a three-level downward adjustment for acceptance of responsibility under the United State Sentencing Guidelines ("Guidelines"), U.S.S.G. § 3E1.1(a).  In the plea agreement, the parties agreed that the defendant's base offense level should be 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i)(I) and agreed that the facts of the case did not support the application of any enhancements under U.S.S.G. § 2K2.1(b) (i.e., for number of weapons, possession of destructive devices or trafficking in weapons).  The defendant also agreed that, if imposed, a Guidelines sentence would be a reasonable

sentence.[1]  The plea agreement noted that the parties had no agreement with respect to the applicability of other Guidelines provisions or to her criminal history category.  The court accepted Bennett's plea but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's Guidelines sentence.  The seized weapon has since been forfeited to the United States. Filing No. 52, Final Order of Forfeiture.

The facts outlined in the PSR are gleaned from the prosecutor's version of events and Omaha Police Department reports.  The PSR relates that Omaha police officers responded to a disturbance at Bennet's home.  She was found on her porch holding a baseball bat. She consented to a search of the home and officers found a Cobray PM-11 9mm semiautomatic pistol with a 30-round magazine hidden between the mattress and box spring of her bed.  She told officers she had the gun for her protection.  She appeared mildly intoxicated at the time.  She had been previously convicted of delivery of crack cocaine and forgery.

In the PSR, the Probation Office identified U.S.S.G. § 2K2.1 as the applicable base offense level provision under the Guidelines for a violation of 18 U.S.C. § 922(g).  The Probation Office determined that defendant's base offense level should be 20 under U.S.S.G. § 2K2.1(a)(4)(B)(i)(I), because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the defendant was a prohibited person at the time of the offense.  The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total

---

[1]The reasonableness of a defendant's sentence is not determined by the defendant.

offense level of 17.  It then determined that defendant's criminal history category was III, as the result of 4 criminal history points assessed for convictions for assault and possession of cocaine.  Bennett's resulting advisory Guidelines sentencing range is 30 to 37 months.

At the sentencing hearing, Bennet moved for a downward departure or variance from the Guidelines based on her extraordinary rehabilitation.  Defense counsel stated that such a motion had been contemplated by the parties in the negotiation of the plea agreement.  The defendant argued that a sentence lower than that calculated under the Guidelines was warranted in the case because her successful completion of a difficult program of drug and alcohol rehabilitation at Williams Prepared Place in Omaha showed an extraordinary level of acceptance of responsibility and rehabilitation.  The government acknowledges that the defendant's rehabilitation has been extraordinary.

In connection with her motion for a variance, Bennett asked the court to consider her background and history.  Ms. Bennett is 39 years old.  She has a tenth grade education and has trouble reading and writing.  The PSR relates that she was raped by a cousin at age 13 and subsequently gave birth to a stillborn child.  Bennett has four children, ranging in age from 17 to 23.  Bennett began using crack cocaine at age 19 and was still using it at the time of her arrest.  She also smoked marijuana and abused alcohol.  She has successfully completed a treatment program at Williams Prepared Place in Omaha and she has not used drugs or alcohol in over a year.

## II.  DISCUSSION

### A.  Law

The United States Supreme Court has determined that a mandatory federal sentencing guidelines system violates the Sixth Amendment.  *United States v. Booker,* 543

U.S. 220, 226-27 (2005) (substantive opinion).   The constitutional infirmity has been remedied by interpreting the Guidelines as advisory.  *Id.* at 245.  Accordingly, the range of choice in sentencing dictated by the facts of the case has been significantly broadened since the *Booker* decision.  *Gall v. United States,* 552 U.S. —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines range was reasonable); *Kimbrough v. United States,* 552 U.S. —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines).

Under the Sentencing Reform Act, as modified by *Booker,* judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence.  *Booker,* 543 U.S. at 261.  As the Supreme Court recently clarified in *Gall,* "the Guidelines should be the starting point and the initial benchmark" in determining a sentence.  *Gall,* 552 U.S. at —, 128 S. Ct. at 596 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); *United States v. Hernandez,* 518 F.3d 613, 616 (8th Cir. 2008).  However, the Guidelines are not the only consideration.  *Gall,* 552 U.S. at —, 128 S. Ct. at 596.  "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."  *Id.*  District courts must therefore "give

4

respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* 552 U.S. at —, 128 S. Ct. at 596.

In doing so, however, the district court "may not presume that the Guidelines range is reasonable." *Gall,* 552 U.S. at —, 128 S. Ct. at 596; *see also Rita*, 551 U.S. at —, 127 S. Ct. at 2465 (stating that appellate courts may apply a presumption of reasonableness to a within-Guidelines sentence, but the presumption does not apply to sentencing courts). The district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring) (stating that "any thumb on the scales," that would indicate that the "the Guidelines must be followed even where the district court's application of the § 3553(a) factors is entirely reasonable" would violate the Sixth Amendment because "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence *but for* the presence of certain additional facts found by judge rather than jury") (emphasis in original).

If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id*. The Supreme Court has rejected, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" as well as "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.*, 552 U.S. at ___, 128 S. Ct. at 595; *see also Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (noting that a sentencing judge has greater familiarity with an individual case and an individual defendant than either the

Commission or the appeals court and is therefore in a superior position to find facts and judge their import under § 3353(a) in each particular case). The district court "must make an individualized assessment" of each case "based on the facts presented." *Gall*, 552 U.S. at —, 128 S. Ct. at 596.

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570. The general goals of sentencing require consideration of "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). Also, the statute further provides that, in determining the appropriate sentence, the court should consider a number of factors, including "the nature and circumstances of the offense" and "the history and characteristics of the defendant." *Id.*, § 3553(a)(1). The court must also consider "the kinds of sentences available," the Sentencing Guidelines and relevant policy statements, the need to avoid sentencing disparities, and the need to provide restitution to any victim. 18 U.S.C. § 3553(a)(3)-(7).

The Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) (hereinafter, "Fifteen-Year Assessment"). The Sentencing Commission ("the Commission") was originally charged

by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12-13. Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines. *See id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (regarding drug trafficking guidelines). Based on sentencing statistics, the Commission established the base offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 564 (noting that in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives).

However, for policy reasons, and because statutory mandatory minima dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual offenses. Fifteen-Year Assessment at 15, 72-73; *see Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574. In cases involving application of Guidelines that do not exemplify the Commission's exercise of its characteristic institutional role---basing its determinations on "'empirical data and national experience, guided by a professional staff with appropriate expertise,'"—it is not an abuse of discretion for a district court to conclude when sentencing a particular defendant that application of the guideline will yield a sentence "greater than necessary"

to achieve the purposes set out in § 3553(a).  *Kimbrough*, 552 U.S. at —, 128 S. Ct. at

574-75 (*quoting* United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell,

J., concurring)).

The guidelines that establish the base offense levels for weapons crimes were also

promulgated in large part pursuant to Congressional directive.  *See, e.g.,* U.S.S.G. app.

C, Vol. I, amends. 189 (1989), 333 (1990), 522 (1995); *id.*, Vol. II, amends. 578 (1998), 629

(2001), 631 (2001), 669 (2004).[2]  Under U.S.S.G. § 2K2.1(a), as it is currently structured,

---

[2]At the inception of the Guidelines, the crime of being a felon in possession of a weapon carried a base offense level of 9, based on past practices.  *See* United States Sentencing Commission, Guidelines Manual, § 2K2.1 (a) (Nov. 1, 1987); Fifteen-year Assessment at 66.  In 1989, the base offense level for possession of most weapons was increased to from 9 to 12 and the base offense level for possession of a machine gun or sawed-off shotgun was increased from 12 to 16 to comply with the Anti-Drug Abuse Act of 1988 ("the Drug Kingpin Act"), which increased the statutory maximum for the felon-in-possession offense. *See* U.S.S.G. app. C, Vol. I, amend. 189 (1989).  The base offense level under § 2K2.1(a)(1) was increased from 16 to 18 in 1990, "to better reflect the seriousness of the conduct covered" by U.S.S.G. §§ 2K2.1 and 2K2.2.  *Id.*, amend. 333 (1990); Fifteen-year Assessment at 66.  The base offense levels for possession of semi-automatic assault weapons were increased to conform to 26 U.S.C. § 5845 and the base offense levels for sale to a juvenile were increased pursuant to the Violent Crime Control Law Enforcement Act of 1994. U.S.S.G. app. C, Vol. I, amend. 522; see also Fifteen-year Assessment at 66 (noting that "[t]he Commission amended U.S.S.G. § 2K2.1 in response to these directives").  The Sentencing Commission was also directed to add a person under a court order for a domestic abuse felony to the list of persons prohibited from possessing a weapon under that statute.  *Id.*  Later, the Commission changed the definition of "prohibited person" to include those convicted of misdemeanor crimes of domestic violence and increased the base offense level for transfer or sale to a prohibited person in conformity with the Treasury, Postal Services and General Government Appropriations Act of 1996, contained in the Omnibus Consolidated Appropriations Act for Fiscal 1997.  *Id.*, Vol. II, amend. 578 (1998); Fifteen-year assessment at 66 ("The most recent amendments track statutory changes expanding the class of persons prohibited from possessing firearms and further increasing penalties.").  In 2001, addicts and mental defectives were added to the list of prohibited persons to conform to statutory changes.  U.S.S.G. app. C, Vol. II, amend. 629 (2001).  The Sentencing Commission responded to "recommendations from the ATF to increase the penalties for possession of more than 100 firearms" by modifying the firearms table in § 2K2.1(b)(1) to provide enhancements for the number of weapons in two-level, rather than one-level, increments and by compressing the weapons table to provide a wider range of the number of weapons in each enhancement provision.  *Id.*, amend. 631 (2001); Fifteen-year assessment at 66 (noting that penalties were increased at the suggestion of the Bureau of Alcohol, Tobacco, and Firearms).  In 2006, in response to the expiration of the statutory assault weapons ban, the Sentencing Commission eliminated the reference to the statute and added the language "semi-automatic capable of accepting large capacity magazines" to the provision that would set a defendant's base offense level at 20. U.S.S.G. app. C, Vol. II, amend. 691 (2006).

The amendments to the guideline doubled sentences for possessory crimes between 1988 and 1995. Fifteen-year Assessment at 67, preface at viii  (noting that for illegal possessors probation has been replaced almost completely by imprisonment).  Time served has steadily climbed since 1992, in part as a consequence of cases generated by Justice Department initiatives, but mainly because guideline amendments have dramatically increased offense levels, particularly for offenders with prior convictions and those who used more dangerous weapons.  *Id.*, preface at xi (noting that "[t]hese changes in sentences for illegal firearm transactions and possession represent one of the most substantial policy changes initiated largely by the Commission").

the base offense level for unlawful receipt, possession, or transportation of a firearm by a prohibited person is 12, and for certain violations in the nature of notice, record-keeping, and licensing violations, the base offense level is 6. U.S.S.G. § 2K2.1(a); *see* 18 U.S.C. § 922(c), (e), (f), (m), (s), (t), & (x)(1). The base offense level increases to 14 if the defendant is a prohibited person, which includes a felon, at the time of the offense. U.S.S.G. § 2K2.1(a)(6). The base offense level increases to 18 for weapons such as short-barreled shotguns or machine guns and to 20 if the offense involved possession of a semiautomatic weapon that is capable of accepting a large capacity magazine. U.S.S.G. §§ 2K2.1(a)(5); 2K2.1(a)(4)(B).

With respect to the type of sentence imposed, the Supreme Court recognizes that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. *Gall,* 552 U.S. at —, 128 S. Ct. at 595. Nevertheless, offenders on probation are subject to several substantial restrictions on their liberty, including provisions requiring that they may not leave the judicial district, move, or change jobs without notifying their probation officer or the court, that they report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, refrain from excessive drinking, and submit to drug testing. *Id.* A sentence of probation rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing. *Id.* at 599.

In the Eighth Circuit, "precedents prior to Gall 'routinely' rejected as unreasonable those variances that resulted in a sentence of probation when the guidelines recommend

a term of imprisonment," but the appeals court now recognizes that a sentence of probation is permissible for a drug trafficking offense that calls for imprisonment under the advisory Guidelines under certain compelling circumstances. *United States v. Lehmann,* 513 F.3d 805, 809 (8th Cir. 2008) (finding that evidence that a defendant's incarceration would have a very negative effect on the emotional development of a defendant's young son, is the sort of 'compelling family circumstance' that would justify probation for a drug trafficker with a guidelines range of 30-37 months' imprisonment).

Because the Sentencing Commission accounted for ordinary post-offense rehabilitation in providing an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, a defendant's rehabilitation must be exceptional enough to be atypical in order to warrant a departure on that basis. *See United States v. Rogers,* 400 F.3d 640 (8th Cir. 2005). Factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors. *United States v. Lazenby,* 439 F.3d at 933. "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006).

### B. Analysis

#### 1. Initial Guidelines Calculation

The court adopts the findings in the PSR and finds that defendant's base offense level is 20, her criminal history category is III, and her sentencing range of imprisonment is 30 to 37 months.

### 2.  Departure

Bennett moves for a downward departure for extraordinary rehabilitation under U.S.S.G. § 5K2.0.  The court finds Bennett's rehabilitation is sufficiently atypical and exceptional to warrant a departure.  The government is not opposed to the motion.  Sadly, in the court's experience, Bennett's rehabilitation is outside the norm.  She has completed a rigorous chemical dependency treatment program.  The court has reviewed the material submitted in connection with Bennet's motion for either a departure or variance, including the records of her treatment, and finds that Bennett's rehabilitation has been extraordinary.

The court finds that Ms. Bennett's progress is atypical enough to warrant a departure under the Guidelines.  First, not all defendants provided the option of chemical dependency treatment take advantage of the opportunity to the extent that Ms. Bennett has.  Second, it is unusual for the government to concur that a defendant has shown extraordinary rehabilitation.  Also, it is rare that a drug offender will make the efforts at employment and the fulfillment of family obligations that Ms. Bennet has made.  The court appreciates the difficulty of a defendant's overcoming a long-standing addiction.  Ms. Bennett's case is one of the unusual cases in which the court can envision a positive result. The court finds that Bennett's recovery and rehabilitation are atypical and exceptional and the court will accordingly grant a departure from the Guidelines sentencing range on that ground.  As discussed below in connection with a § 3553(a) variance, the court finds a departure to time served is appropriate in this case.

### 3.  18 U.S.C. § 3553(a) Factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of time served is sufficient, but not greater than necessary to

accomplish the goals of sentencing.  In consideration of the nature and circumstances of the offense, the court notes that there is no evidence that Ms. Bennett had any intention to use the gun for anything other than protection.  Bennett has consistently maintained that she never flashed the weapon or used it to intimidate anyone.  The evidence that she displayed the gun is equivocal at best.  It does not appear that the weapon had any role in the incident that led to her arrest.  Bennet's base offense level under the Guidelines was increased by six levels because the weapon had the capacity for a large magazine, but there is no indication that Ms. Bennet knew the characteristics of the gun or would have been inclined to take advantage of that capacity.  Such a large proportionate increase in base offense level would be justified in a case where the facts supported the conclusion that the gun's capacity increased the potential for widespread injury.  The facts do not support such an increase in this case.

The court has also considered the history and characteristics of the defendant.  *See* 18 U.S.C. § 3553(a)(1).  Ms. Bennet was traumatized as a youth.  She has had a long-standing addiction to drugs and alcohol.  She has successfully completed alcohol and drug abuse treatment and is presently enrolled in the outpatient program at Williams Prepared Place.  She has exhibited responsibility for her actions and has shown self-reliance.  She has taken responsibility for the care of her teen-aged daughter and her grandchildren.  Her criminal record consists of a drug offense almost fifteen years ago and an assault as a result of an altercation for which she was fined fifty cents and sentenced to probation. These offenses were related to her drug and alcohol addictions.  Under the circumstances, Ms. Bennett should be rewarded for her efforts at rehabilitation.

The court finds this sentence satisfies the general purposes of sentencing, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Ms. Bennet was incarcerated from July 26, 2007, until October 11, 2007, when she entered the residential program at Williams Prepared Place. The residential program at Williams Prepared Place is a substantial restriction of freedom. Bennett has forfeited the weapon to the government. The fact of Ms. Bennett's incarceration for several months and placement in a restrictive residential program will afford adequate deterrence to criminal conduct of this nature. Because Ms. Bennett appears to appreciate the gravity of her offense, has made substantial gains in anger management, has refrained from using drugs or alcohol, and has forfeited the gun, there does not appear to be a great need to protect the public from further crimes by the defendant. The court's imposition of a three-year period of supervised release, including stringent conditions of supervision, continued participation in her drug-abuse program and random drug tests, ensures that the court can incarcerate Bennett in the future should she fail to comply with the terms of supervised release. This sentence also fulfills the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner by allowing Ms. Bennett to remain enrolled in Williams' Prepared Place's program. See 18 U.S.C. § 3553(a)(2).

With respect to the "the kinds of sentences available," 18 U.S.C. § 3553(a)(3), the court has the authority to impose a sentence that does not include continued incarceration in certain circumstances. This in a case that presents compelling circumstances that call for a sentence outside the advisory Guidelines. As noted above, the court has considered

the sentencing Guidelines, but, because they were promulgated pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines.  *See Kimbrough*, 552 U.S. at —, 128 S. Ct. at 574-75.

This sentence also satisfies the need to avoid unwarranted sentence disparities. The defendant's conduct in this case is considerably less culpable than the ordinary felon in possession of a firearm who is prosecuted in this court.  *See* 18 U.S.C. § 3553(a)(6). A Judgment and Statement of Reasons in conformity with this Sentencing Memorandum will be entered this date.

DATED this 30th day of May, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge